(78 South. 800)

J. F. DONAHOO CO. v. RELIANCE EQUIPMENT CO. (1 Div. 34.)

(Supreme Court of Alabama. April 18, 1918.)

1. SALES ⬤⟳176(4), 267 — WARRANTY — SALE SUBJECT TO INSPECTION.

Where defendant agreed to sell hoisting engine of certain type and capacity "subject to inspection," and plaintiff wrote that a third person had gone to inspect the engine, and a week later wrote, ordering it to be shipped, and it was shipped in reliance on presumption that it had been inspected, plaintiff was estopped to claim that it was shipped under warranty or representations calculated to deceive.

2. SALES ⬤⟳168(1)—INSPECTION—RIGHTS OF PARTIES.

Agreement that buyer should inspect hoisting engine before shipment, and, if he failed to do so, seller's inspection should be final, applied at most to excuse defects of quality or condition, but did not permit shipment of a machine of different kind and size.

---

3. SALES ⬟166(1)—INSPECTION—RIGHTS OF PARTIES.

Where defendant agreed to sell hoisting engine of certain type and capacity, but shipped a different sort, plaintiff was not bound to accept it, regardless of fact that defendant was not the manufacturer or did not have it in stock, and the parties were negotiating for a particular engine, unless he had knowledge of the difference or had led defendant to believe that he had inspected it.

4. EVIDENCE ⬟5(2)—JUDICIAL NOTICE.

Where defendant agreed· to sell a 6x10 hoisting engine, but shipped an 8x10 log skidder, the court could not take judicial notice that they were practically the same.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by the J. F. Donahoo ˙Company against the Reliance Equipment Company in special assumpsit. Judgment for defendant, and plaintiff appeals. (Transferred from the Court of Appeals under section 6, Acts 1911, p. 449.) Reversed and remanded.

Count 1 seeks to recover $600 damages for that plaintiff bought from defendant a certain double cylinder, double drum hoisting engine, with boiler complete with all fittings, and about 1,000 feet of three-quarter cable on drums of engines, all in first-class second-hand condition, that said sale and the negotiations leading up to same were conducted, and the sale brought about, by and through the agency of letters exchanged by and between plaintiff and defendant, and that plaintiff did not either at·the time of or prior to. buying said machinery from defendant see or examine the same, but he says he bought same by description, and relying on the description and information given to him by defendant. Plaintiff avers that he paid defendant for said machinery the sum of $325, and that defendant at the time of the consummation of said sale was informed by plaintiff and well knew that plaintiff was purchasing said machinery for the purpose of resale at a profit, and that, in fact, he had bargained with said C. J. Rogers, to sell said machinery to said Rogers. Yet plaintiff says that defendant has not delivered, and will not .deliver,. to plaintiff the machinery by him purchased as aforesaid, but he says that, on the contrary, said defendant shipped and consigned to said C. J. Rogers, in ˙placing machinery purchased by plaintiff as aforesaid, certain machinery of another and different kind or ·description from the machinery purchased by plaintiff in that defendant shipped and consigned to said Rogers machinery known and described as a log skidder, which machinery, plaintiff avers, was not and is not the same as the machinery purchased by him. And plaintiff avers that upon arrival of said log skidder at Clarksdale plaintiff discovered that the machinery shipped by defendant did not answer the description of and was not the machinery by him purchased, and he says he notified defendant of such fact, and refused to accept said log skidder in the place of the hoisting engine by him purchased, and notified defendant of such refusal, and plaintiff says he demanded that defendant carry out his agreement, and deliver to him a hoisting engine answering the description of that purchased, or refund plaintiff the amount by him paid for the hoisting engine to. defendant, and he says that defendant has wholly failed. or refused to comply with either demand. Count 2 is based upon falsely and deceitfully representing the facts set out in count 1. Count 4 is for money received by defendant for the use . of plaintiff. Count 5 is of the same nature. Amended plea 2 filed to counts 1, 4, and 5 of the complaint is as follows:

Defendant says that true it is that plaintiff bought from defendant a certain hoisting engine, that said engine was by defendant shipped to one Rogers at Clarksdale, Miss., that plaintiff paid to defendant $325, and that thereafter, and after there had been a completed sale and delivery, plaintiff sought to rescind the sale and demanded return by defendant of the· said $325, but so it is, as defendant says, that plaintiff ought not to have and recover of defendant any sum of money whatsoever, for that defendant says that said sale by defendant to plaintiff was made upon condition that the engine should be inspected before shipment, and that, if it should not be inspected, the seller's inspection should be final. And defendant avers that thereafter, and before the consummation of the sale, plaintiff informed defendant that one Geohegan was on that day leaving Birmingham to inspect the engine, and the next advised that defendant had from plaintiff, to wit, six days later, was a statement that the trade was closed, and that the engine should be shipped in accordance with shipping instructions to be furnished later. And defendant avers that such shipping instructions were furnished later, and that defendant shipped in accordance with such instructions. And defendant avers that it assumed, as it had a right to assume, that the inspection had been made, and defendant bought the said engine from the Toinette Lumber Company and shipped it upon . such assumption. Wherefore defendant says that plaintiff has estopped himself now to insist that he did not inspect and that the engine is not as ordered. And defendant avers that the alleged difference between the engine as it exists and the engine that plaintiff says defendant sold him was a difference readily susceptible upon inspection. And defendant avers that the engine was not in the possession of defendant nor did it belong to defendant, but the engine belonged to and was in possession of the Toinette Lumber Company, at Toinette, Ala., a small station on the Southern Railroad about 50 miles from Mobile, and it was well known to plaintiff that defendant would be obliged to buy this engine from the Toinette Lumber Company in order to sell it to plaintiff, and the engine was represented to defendant as a 6x10 engine, and defendant in good faith thought that the engine was in fact a 6x10 engine, and relied upon the assumption that plaintiff had inspected the engine, and defendant did not therefore himself inspect the engine and learn its actual dimensions.

The following are pleas 3 and 4 to counts 1 and 2:

(3) Defendant says that the engine referred to in counts 1 and 2 belonged to and was in

possession of the Toinette Lumber Company, and was situated at Toinette, Ala., 50 miles up in the country from Mobile, all of which was well known to plaintiff, and defendant avers that the trade between plaintiff and defendant was that plaintiff should inspect if he desired to do so, and if he should not do so, then the seller's inspection should be final, and defendant avers that the inspection thereby intended was the inspection of the first seller, to wit, the Toinette Lumber Company, who sold to defendant, who, in turn, sold to plaintiff.

(4) Defendant says that the trade between the parties was not a sale of an engine of certain dimensions, out of a stock of engines, such as would be carried by a manufacturer, but was a sale of a specific engine known by both parties to be actually in the possession of, and at the plant of the Toinette Lumber Company, at Toinette, Ala., and the sale was expressly made of the engine as it stood subject to the inspection of the buyer, and that the description of the engine contained in the correspondence between the parties was not a warranty of the engine's dimensions, but was merely a general description to denote the type of the engine, and was governed by the specific thing itself, which was agreed to be purchased as it was, and defendant was not responsible for plaintiff's failure to inspect the engine, and his subsequent dissatisfaction therewith.

The third plea to the fourth count is as follows:

The matters and facts out of which said alleged claim grows are in truth and fact as follows: Plaintiff was engaged at Birmingham in the business of buying and selling second-hand machinery, and defendant was engaged in the same business at Mobile, and they entered into negotiations for the purchase by plaintiff of defendant and sale by defendant to plaintiff of a certain hoisting engine which was known to both parties to be located at the plant of the Toinette Lumber Company at Toinette, Ala., and to be in the possession and ownership of that company, and the agreement between plaintiff and defendant was that plaintiff should buy of defendant the engine as it stood without any warranty whatever on the part of defendant as to the size or condition of the engine. And defendant avers that plaintiff paid defendant for the engine and ordered it shipped without plaintiff's having first inspected the engine, and he cannot now complain of his own lack of care in this behalf.

Vincent F. Kilborn, of Mobile, for appellant. Palmer Pillans and William Buck Taylor, both of Mobile, for appellee.

ANDERSON, C. J. The complaint charges, in counts 1 and 2, that the defendant shipped a different kind and size machine from the one the defendant offered to sell him, and in fact a different machine from the one he purchased. The pleas, while averring that the sale was to be made upon inspection by the buyer, do not seek to avoid a warranty as to the kind of machine in the event there was no inspection, but relies upon the fact that the defendant was misled by the conduct of the plaintiff into shipping the machine; in other words, they set up that the plaintiff, who had the right to inspect and to whom the defendant had contracted to sell as per inspection, informed the defendant, in effect, that his man was that day leaving to inspect the engine, and that the next advice that de-

fendant received was an order, six days later, to ship the machine; that the defendant therefore had the right to assume, when shipping the machine, that the plaintiff had had the same inspected before ordering same, and that when he ordered it, six days later, he was doing so upon the strength of the inspection, and was not relying upon any previous representations of the defendant descriptive of the machine, and, as averred, the difference contended for by the plaintiff was readily susceptible upon inspection. We think that these pleas exclude all idea that the defendant shipped the machine under any warranty or representations, but was induced by the plaintiff's conduct to believe that he was purchasing upon inspection, and not upon warranty or representations of the defendant.

[1] The plaintiff having led the defendant to believe that the machine was inspected, and that he knew what he was getting when ordering the same shipped, and, the difference complained of being discoverable upon inspection, he is now estopped from claiming that the defendant shipped the same under any warranty or fraudulent representations calculated to deceive, and the trial court did not err in overruling the demurrers to the amended pleas. It may be that a failure to inspect would not of itself relieve the defendant of an obligation to ship the kind of machine he offered for sale, although it was offered as per buyer's inspection, but if the plaintiff, who was to inspect, led the defendant to believe that he had so inspected it, whether he did so or not, and the defendant shipped the machine upon the strength of this belief, the plaintiff is estopped from claiming any difference between the kind he got and the one offered, if the said difference was so open to ordinary observation as to have been detected upon an inspection. If the plaintiff represented to the defendant a material fact, or by conduct led him to believe the existence of certain material facts or conditions, upon which he had the right to rely and upon which he acted, he is estopped from setting up the nonexistence of said facts or conditions to the prejudice of the defendant, who acted upon same. 16 Cyc. 722; Adler v. Pin, 80 Ala. 351; Knowles v. Street, 87 Ala. 357, 6 South. 273; Nelson v. Kelly, 91 Ala. 569, 8 South. 690; United States v. Leftwich, 132 Ala. 131, 31 South. 474; Sellers v. Commercial Fire Ins. Co., 105 Ala. 282, 16 South. 798. The authorities relied upon by the appellant's counsel are not only not in conflict with this holding, but such of them as are apt recognize the foregoing principle of estoppel.

It is true the pleas do not aver that "Geohegan" was leaving to inspect for the plaintiff, or that he was the plaintiff's agent, but the only rational inference to be drawn from the information that he was leaving to inspect was that he was doing so at the in-

stance of, or for the benefit of the plaintiff, who was negotiating with the defendant. It is not the question of "Geohegan's" agency or authority; for, if it was of the essence of the defense, the pleas would have to set it up, and no inference would be drawn in favor of same upon demurrer to said pleas, as the question is not one of agency or authority, but what did the plaintiff mean by giving the defendant this information, and then subsequently ordering the machine shipped without informing the defendant that an inspection had not been made. It matters not whether "Geohegan" did or did not inspect the machine, or whether or not he was acting for the plaintiff, as the defendant had the right to rely upon the acts and conduct of the plaintiff, and he could have reasonably inferred from said acts and conduct that the inspection was being made by or for the plaintiff, and that the order to ship was upon the strength of the inspection, and not upon a reliance of the defendant's description or representations as to the kind, character, or quality of the machine. The trial court did not err in overruling the demurrer to amended plea 2 to counts 1 and 2 and amended plea 2 to counts 4 and 5 of the complaint.

[2] While the authorities are not entirely harmonious on the subject, we think that the agreement alleged that the appellant should inspect the engine before shipment, and, if he should not, seller's inspection should be final, applied at most to excuse defects of quality, or condition, and such agreement did not permit the seller to send the buyer a different kind and size. Whitney v. Boardman, 118 Mass. 242. See note to case of Springfield Shingle Co. v. Edgecomb Mill Co., 35 L. R. A. (N. S.) 258; Gachet v. Warren, 72 Ala. 288. A representation as to the kind or description of the article offered for sale, where the buyer has not inspected same, is in the nature of a condition precedent and the seller must, of course, deliver the article offered. Benjamin on Sales, § 656. The sale by inspection did not contemplate that unless there was an inspection by the buyer, who ordered the article without inspection, the seller could send him a different article from the one offered, and the failure to inspect would be binding on him as to defects in the quality or condition rather than kind or description. If the vendor offers a certain kind of machine, and the vendee accepts it without inspection, the meeting of the minds was as to the kind of article offered, and not one of a different kind and description. A vendor cannot offer to sell a six-horse wagon and ship a one-horse one, or a cart, and compel the vendee to accept and pay for same, simply because he was to inspect the same and failed to do so. The vendee may by failure to inspect excuse all defects as to quality and condi-

tion, but he has a right to waive this warranty and order the article offered him expecting to get the kind described in the offer. Of course, if he inspects the goods and the difference, not only as to the defects and condition, but as to the description and kind, is obvious and apparent, and, he then buys them, he waives the condition precedent as well as the defects or condition. This upon the theory that the vendee did not rely upon the description or warranty. 35 Cyc. 376.

[3] It matters not that the defendant was not the manufacturer of the machine, or did not have the same in stock, and that the parties were negotiating for a particular one at "Toinette," Ala.; the complaint charges that defendant represented it as "1 6x10 double cylinder, double drum hoisting engine, with boiler, complete with all fittings and about 1,000 feet of ¾ inch cable on drums of engine," and that the machine shipped was different in kind or description, and was not the same purchased but was an "8x10 log skidder." The plaintiff was not required to accept the same unless he had inspected same before he ordered it shipped or had led the defendant to believe that he had inspected and was ordering from his own knowledge instead of from the defendant's description of same.

[4] It is suggested in brief of appellee that the machines described in the complaint are in fact practically the same, but we cannot take judicial knowledge of this fact, and the pleas do not aver it. In fact, the complaint avers that they were different. The trial court erred in not sustaining the plaintiff's demurrer to pleas 3 and 4 to counts 1 and 2 and plea 3 to the fourth and fifth counts.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.