44 So.2d 561
**MOSS et al. v. BROWN.**
**6 Div. 837.**

Supreme Court of Alabama.
Dec. 1, 1949.
Rehearing Denied March 9, 1950.

Benners, Burr, Stokely & McKamy and Frontis H. Moore, Birmingham, for appellants.

Graham, Bibb, Wingo & Foster, Birmingham, for appellee.

BROWN, Justice.

This appeal is from the final decree of the circuit court sitting in equity construing the last will and testament of Clarence L. Moss, deceased, who died December 15, 1942, leaving surviving his widow Flossie Lee Moss, two daughters Louise and Elizabeth and two sons Howard and Clarence L. Moss, Jr.

The will was duly probated and at the time the bill was filed, more than four years after the death of the testator, the administration was pending in the Probate Court of Jefferson County. The widow and the eldest son Howard were nominated in the will for appointment as executors of said will and were appointed as such.

After qualifying as such and receiving letters testamentary, they proceeded to collect the assets and to administer the estate under the terms of said will as they construed it. Among other assets, in fact the major asset from the standpoint of the devisees named in said will, was one-half of the capital stock of the Moss & McCormack

Coal Company, a corporation, of the par value of $100,000. The business of the corporation was active at the time of the testator's death and up to that time was being operated by said testator and the personal representative of the late G. B. Mc-Cormack, deceased, who before his death owned the other half interest in the stock of said corporation.

After the death of the testator his eldest son Howard became president of the corporation and became active in the conduct of the business of said corporation in connection with the representative of the Mc-Cormack interest. The earnings of the estate's interest were applied by the executors of the will to the business and the maintenance of the widow and Clarence, Jr., who was a minor and in college. Elizabeth had been paid nothing from the estate but had received $10,000, the proceeds of an insurance policy in which she was the beneficiary. The bill in this case was filed by her to remove the administration of the estate from the probate court to the circuit court, in equity, for a construction of Item Three of said will and to that end the bill alleges:

" * * * that respondents Flossie Lee Moss, Howard Moss and Clarence L. Moss, Jr., by Item Three of said Will, were constituted trustees of a large portion of the estate of said Clarence L. Moss, which portion was devised and bequeathed to said Flossie Lee Moss, Howard Moss and Clarence L. Moss, Jr., in trust upon the terms and conditions set forth in said Will; that by said Item Three of said Will the beneficial interest in said trust estate was devised and bequeathed as follows:

"Twenty-six per cent to be held in trust for Flossie Lee Moss; twenty-five and one-half per cent to be held in trust for Howard Moss; twenty-five and one-half per cent to be held in trust for Clarence L. Moss, Jr., and twenty-three per cent to be held in trust for the Complainant, Elizabeth Moss Brown. The Complainant has never received any money, or property, under the Will of said Clarence L. Moss, from the Executors or Trustees named and constituted by said Will, and complainant has never received anything whatsoever from the estate of said Clarence L. Moss under said will or from the trust created by said Will.

"That Section 8, Item Three, of said Will provides that upon the death of Flossie Lee Moss the trust fund held in trust for said Flossie Lee Moss shall become a part of the trust fund held in trust for Howard Moss, Clarence L. Moss, Jr., and the complainant, and shall be divided and held equally among Howard Moss, Clarence L. Moss, Jr. and the complainant; but there is no express provision in said will that the fund held in trust for Flossie Lee Moss shall be divided upon the death of Flossie Lee Moss; nor is there any express provision in said will as to when or upon what contingency or event, subsequent to the death of Flossie Lee Moss the fund held in trust for her shall be divided among Howard Moss, Clarence L. Moss, Jr., and the complainant; nor is there any express provision in the will stating that at the time Flossie Lee Moss' share in the trust fund is divided, the remainder of said trust fund shall be divided; nor is there any express provision in the will stating when, or upon what contingency or event, the whole trust fund shall be distributed and divided."

A copy of the will is attached to the bill and made a part thereof and we quote therefrom pertinent provisions.

"Item Three: I give, devise and bequeath unto my wife, Flossie Lee Moss, my son Howard Moss, my son Clarence L. Moss, Jr., effective when he reaches the age of twenty-one (21) years or earlier if qualified through appropriate legal process, said Flossie Lee Moss and Howard Moss to have full power and authority to act hereunder, until Clarence L. Moss, Jr., is qualified, jointly as Joint Trustees, my business, and all the rest and residue of my property, real, personal and mixed, which I may own or to which I may be entitled at the time of my death or to which my estate may become entitled after my death, in trust, however, for the uses and purposes and with the powers hereinafter set forth, to-wit:

"1. The Trustees shall take charge of, manage and control all of the trust property, operating, leasing, selling, improving or otherwise handling the same, including

the making of coal and other contracts, renewal of leases, making new leases, purchase of property and the doing of any and all things or acts necessary for operating the properties, as the Trustees deem best and shall collect all income derived therefrom. * * *

"2. The Trustees shall have the power and authority to sell at private sale, without order of court, and convey any or all of the trust property at such time or times as the Trustee may deem to be to the interest of the trust estate, and if in their discretion said trustees shall deem it to the advantage of the beneficiaries hereunder to dispose of all of the trust property, the proceeds shall be divided in accordance with the terms and conditions of this instrument and the trust terminated and closed. The proceeds of such sales, as well as any other funds belonging to the estate which are not necessary to be otherwise used in the administration of this trust, may be by the Trustees from time to time invested in such class of securities or investments as the Trustees may in their discretion deem advisable, * * *.

"4. Any and all distribution of capital stock of corporations issued to the estate as stock dividends, and all dividends from partial or complete liquidation shall be treated by the Trustee as part of the corpus of the trust estate.

* * * * * *

"8. Twenty-six (26%) per cent of the trust estate shall be held in trust by the Trustees for my wife, Flossie Lee Moss, during the term of her life. Upon the death of my wife, the said trust fund held in trust for her shall become a part of the trust fund held in trust for my children and shall be divided and held equally among my three children, Howard Moss, Elizabeth Brown, and Clarence L. Moss, Jr. My daughter Louise Moss has been provided for by insurance (trust) policies in the Mutual and New York Life Insurance Companies, but should such insurance fail or for any reason be not available for her maintenance and support, I direct my Executors and Trustees to provide for her comfort, support and maintenance out of

the income from my said estate, and/or the trust herein created.

* * * * * *

"10. Twenty-five and one-half (25-1/2) per cent of said trust estate shall be held in trust for my son Howard Moss, twenty-five and one-half (25-1/2) per cent of said trust estate shall be held in trust for my son Clarence L. Moss, Jr., and twenty-three (23%) of said trust estate shall be held in trust for my daughter, Elizabeth Brown.

"Upon the death of my said son, Clarence L. Moss, Jr., should he die leaving no lineal descendants surviving him the principal of his said share shall become a part of the trust fund herein created, and shall be added thereto. * * *

"11. If at the time any child of mine shall die without leaving lineal descendants surviving, there shall at said time be held in trust any funds under the provisions hereof for any beneficiary, then the portion of the share of said deceased child to which said beneficiary shall be entitled under the terms hereof, shall be added to the trust funds so held in trust for said beneficiary and become fully a part thereof and be distributed at the times provided herein for the distribution of said trust funds.

* * * * * *

"14. When any payment has been made from the principal of the trust estate in accordance with the provisions of this will the Trustees shall be to that extend discharged from this trust, and when the final payment has been made from the principal of the trust estate in accordance with the provisions of this will, *this trust shall terminate* and the Trustees shall forthwith stand discharged. The Trustees may in their discretion discard any lands for which there is no title or which are barren and thereby terminate the trust to that extent.

"15. In making any oppointment and/or distribution of principal as herein contemplated, my Trustees are authorized to themselves determine the total value of my estate and make selection of the items of property to be paid over and distributed to the party or parties entitled thereto with reference to the share of the trust estate to which such party or parties may be entitled, and without securing any valuation or deter-

mination of valuation or direction as to specific items of property to be paid over and distributed from any court; it being my intention that my Trustees shall use their sole judgment and discretion in any such determination, without liability to any one on account of the exercise of such judgment and discretion.

\* \* \* \* \* \*

"Item Four: During the period of the administration of my estate, my Executors hereinafter named shall have and may exercise all of the rights, powers and duties herein granted to or conferred upon the Trustees."

Flossie Lee Moss and Howard Moss were made parties defendant in their representative and fiduciary capacities and as individuals with Clarence L. Moss, Jr., who was named as a trustee but who has not qualified either as executor or trustee. Louise died two years after her father's death. The several defendants filed answers admitting the material allegations of the bill and joined in the prayer for construction of the will.

On submission on testimony given *ore tenus* the court entered a decree, accompanied by a written opinion, construing Item Three of the will as follows:

"1. That the two shares of twenty-five and one-half (25-½) per cent each devised and bequeathed to Howard Moss and Clarence L. Moss, Jr., in the residue estate of Clarence L. Moss, deceased, constituting the Trust Estate, and the share of twenty-three (23%) per cent in the said residue of the estate of Clarence L. Moss, constituting the Trust Estate, devised and bequeathed to Elizabeth Moss Brown, by Section 10, Item Three, of the last will and testament of Clarence L. Moss, became vested upon the death of Clarence L. Moss, deceased; and in view of the death of Louise Moss, the aforesaid Howard Moss, Clarence L. Moss, Jr. and Elizabeth Moss Brown own said respective shares free of trust, and are entitled to receive, and are hereby adjudged and decreed to separately own, their respective undivided shares free of trust; provided, however, the residence occupied presently by Flossie Lee Moss, or any substitute therefor hereafter acquired, shall be held in trust for the use and occupancy of said Flossie Lee Moss during her life time.

"2. Flossie Lee Moss has a life estate in the share of twenty-six (26%) per cent in the residue of the estate of Clarence L. Moss, deceased, constituting the Trust Estate, devised and bequeathed to her by Section 8 of Item Three of the last will and testament of Clarence L. Moss, deceased; and said share shall be held in trust during the time of her life, subject to the terms and conditions set forth in said last will and testament, unless such trust is terminated prior to her death in accordance with the provisions of said last will and testament; provided, further that the Trustees shall pay. to Flossie Lee Moss the income from her said share during her life time and if the income therefrom is insufficient for such purpose the said Trustees shall pay to the said Flossie Lee Moss monthly from the corpus of her said share a reasonable sum for her support.

"3. Upon the death of Flossie Lee Moss the trust as to the share of twenty-six (26%) per cent in the Trust Estate, created for Flossie Lee Moss by Section 8, Item Three, of the last will and testament of Clarence L. Moss, deceased, shall terminate and said share (unless and until partitioned in the manner provided for by law relating to property jointly owned) shall be owned equally by Howard Moss, Clarence L. Moss, Jr., and Elizabeth Moss Brown, or the lineal descendant or descendants, if there be such, of any one or more of said last three named beneficiaries who may be deceased at the time of the death of said Flossie Lee Moss, and provided, further, that if prior to the death of Flossie Lee Moss any of said last three named beneficiaries dies without leaving a lineal descendant surviving him or her, then the share of such deceased beneficiary in that part of the Trust Estate devised and bequeathed to the Trustee for the benefit of Flossie Lee Moss during her life time shall be owned jointly by the surviving named beneficiaries, or their respective lineal descendants if there be lineal descendants of a deceased named beneficiary.

"4. That Howard Moss and Flossie Lee Moss, as Executors of the Estate of Clar-

ence L. Moss, deceased, shall complete their administration of such Estate and distribute to Howard Moss, Elizabeth Moss Brown and Clarence L. Moss, Jr., their respective shares, and to the Trustees for Flossie Lee Moss, her share, in keeping with the foregoing. * * *"

Thereafter in pursuance of the court's decree the executors filed their accounts for a partial final settlement which on hearing was audited by the register and reported to the court and ordered passed and confirmed August 26, 1948.

On November 12, 1948, the executors filed a second report as to the further administration of said estate stating *inter alia:*

"That your executors have heretofore made partial final settlement of the state of the said C. L. Moss, deceased, which report and settlement were approved and confirmed by decree of this court dated, to-wit August 17, 1948; that said report and settlement covered the period from the death of C. L. Moss, to-wit, December 15, 1943, through and including December 31, 1947; that, as shown in said report, your executors were compelled to make certain loans principally from The Birmingham Trust National Bank in order to save the more valuable assets from being sold for debts; that under decree of this court dated July 2, 1948, construing the will of the said C. L. Moss, your executors were ordered to make final settlement of the estate; that at the time of the partial final settlement shown above there were debts of the estate still unsatisfied as follows:

Birmingham Trust National
   Bank ..................... $51,000.00
Benners, Burr, McKamy & For-
   man ...................... 5,000.00
Mrs. Flossie Moss ........... 1,000.00

"There were likewise an executor's fee in the amount of $6,000.00, which will be claimed on this settlement and which, subject to the Court's approval, will be paid out of the assets of the estate. The total of these debts, exclusive of the executors' commissions, amount to $57,000.00 and, together with executors' commissions, amount to $63,000.00. In order to make this settlement as directed by the court, your executors have been compelled to sell the stocks and bonds belonging to the estate with the exception of the principal assets, the stock in the Moss & McCormack Coal Company.

"Your executors will further show that with the written approval of Mrs. Carl Brown and Mrs. Flossie Lee Moss your executors have sold said securities to Howard Moss, individually, and to Clarence L. Moss, Jr. The amounts paid were the market price of said stocks and bonds, the total amount received, to-wit, $57,382.00, being specifically approved by Mrs. Brown and Mrs. Moss. * * *

"Your executors would further show that on the original settlement heretofore made your executors showed receipts of $167,536.35 and disbursements of $165,947.-62; that this settlement, as shown by the attached exhibit, shows further receipts of $77,681.30 and disbursements to date of $63,193.05; that the remaining sum of $14,488.25 will be disbursed in the payment of court costs, income taxes, executors' commission, and the balance distributed to the heirs. That, in addition, your executors have disbursed in kind in the proportions fixed by the will all the capital stock of the Moss & McCormack Coal Company. That your executors do not know what is the fair value of said stock but believe that it is worth at this time its par value of $100,-000.00, and your executors claim commissions thereon, if necessary, as shown below."

The executors claim commissions on all disbursements. Said report concludes:

"Your executors further pray that as the amount of income taxes which will be due is subject to the review and audit of the Bureau of Internal Revenue, Your Honor order and decree that the estate be held open pending the executors making the required income tax returns and having the same examined and approved by the Bureau of Internal Revenue, and will order that any amount remaining after the payment of such taxes be distributed to the heirs in their proper proportions.

"Your executors further pray that the court approve the amounts shown to be paid to Mrs. Flossie Lee Moss under the

authority of the will for her support and maintenance.

"Your executors pray that this settlement be a partial final settlement and that all matter *be closed other than the payment of income taxes and the distribution of any amount remaining in your executors hands.* Your executors pray for such other relief as they may be entitled to in the premises." [Italics supplied.] Said report was duly verified by the oath of the executors and was in no respect contested.

After the testimony given *ore tenus* touching the question of solicitor's fees for services rendered was closed and the matter was ready for submission, the executors filed a "second amendment to partial final settlement", embodying the following statement:

"Your petitioners further amend and supplement said partial final report and particularly that part appearing in Paragraphs 2, p. 4, in which it is stated, 'that in addition your executors have disbursed in kind in the proportions fixed by the law, all the capital stock of the Moss & McCormack Coal Company; that your executors do not know what is the fair value of said stock, but believe it is worth at this time its par value of $100.00, and your executors claim commissions thereon if necessary as shown by law.'

"Your executors would further show that the heirs of the estate other than Mrs. Brown desire an appeal to the Supreme Court of Alabama from the decree of this Court construing the Will of Clarence L. Moss, deceased; that said certificates of stock have never been delivered to any of the heirs, but remain in the possession of the company, and your executors on the advice of counsel propose to withhold actual delivery until the Supreme Court renders its decree construing the said Will of Clarence L. Moss. Your executors likewise waive any commissions at this time on account of any distribution or claimed distribution of said stock. * * *"

It appears that the original stock held by the estate was surrendered to the corporation and new certificates issued to Flossie Lee Moss, Howard Moss, Elizabeth Moss Brown and Clarence L. Moss, Jr., who was then *sui juris,* and the stocks and bonds purchased by Howard Moss and Clarence L. Moss, Jr., by and with the consent of the other devisees, no offer being made to rescind the sale and return the property so purchased.

The cause was submitted on motion to dismiss the appeal and on the merits. The appellees' contention is that the appellants have acquiesced in the construction of the will by the court's final decree and have proceeded with the administration of the estate in pursuance thereof and have distributed the stock in the Moss & McCormack Coal Company to the devisees in kind and have caused the transfer thereof to be made on the books of the corporation, vesting in the distributees, other than Flossie Lee Moss, the full title thereto free of the trust, rendering the question of determining the interests of the distributees in said stock moot. The contention of the appellants on the other hand is that the trust cannot be terminated until the death of Flossie Lee Moss.

■ The provisions of the will which we have hereinabove set out clearly confer discretionary powers on the executors to sell the trust property and terminate the trust *without order of the court for the payment of the debts of the estate, the expenses of administration and the costs, and to proceed to final settlement and distribution of the estate.*

■ The record shows that this course was pursued by and with the consent of all parties interested and that the capital stock of the Moss & McCormack Coal Company was distributed in kind to the several devisees in accordance with the provisions of the will. That the original certificates of stock were surrendered and new certificates were issued to each of the devisees and the mere fact that all of the devisees did not call for and receive the certificates evidencing such distribution did not prevent the title from passing into the several devisees. The certificates of stock are mere evidence of ownership of the stock and the executors could not prevent the title from passing by merely directing the officers of the coal company, who were interested and

participated in the distribution, to withhold delivery. The surrender of the original stock certificates and the registration of the interest of the several devisees by the corporation on the books of the corporation affected the transfer of the title to said stock to the respective devisees. Therefore, the question of the character of title received by the devisees at the time of the testator's death was rendered moot. Murphy's Heirs v. Murphy's Adm'r, 45 Ala. 123; Coleman, Mayor, v. Mange et al., 238 Ala. 141, 189 So. 749; U. S. Savings & Loan Co. v. Leftwich, 132 Ala. 131, 31 So. 474; Agee et al. v. Cate, 180 Ala. 522, 61 So. 900.

Moreover the appellants, who purchased the stocks and bonds from the executors, by their participation in such purchase and the executors, who received from such purchasers the purchase price of the stocks and bonds and used the proceeds thereof to pay off and satisfy the debts of the estate and the trust, are estopped to dispute their exercise of the discretionary power vested in them by the will to terminate said trust.

The provision of the will with reference to the death of Clarence L. Moss, Jr., if and when it occurred before the termination of the trust, to the effect if "he die leaving no lineal descendants surviving him the principal of his said share shall become a part of the trust fund created and shall be added thereto," does not vest an interest of any character in such lineal descendants, but contemplated adding to the trust property. So also, the provision "If at any time any child of mine shall die without leaving lineal descendants surviving, *there shall at said time be held in trust any funds under the provisions hereof for any beneficiary,* then the portion of the share of said deceased child to which said beneficiary shall be entitled under the terms hereof, shall be added to the trust funds so held in trust for said beneficiary and become fully a part thereof and be distributed at the times provided herein for the distribution of said trust funds," referred to the death of any child of testator to whom he devised certain portions of his estate and was in-

effective to vest any interest if the trust was terminated under the power vested in the executors before such death. (Italics supplied.]

We are of opinion that the motion to dismiss the appeal is well taken and it is, therefore, granted and the appeal dismissed.

Appeal dismissed.

FOSTER, LIVINGSTON and SIMPSON, JJ., concur.